IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JENNIFER L. PEASE,** | ) | |
| | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. CIV-24-53-SM |
| | ) | |
| **MARTIN O'MALLEY,** | ) | |
| **Commissioner of Social** | ) | |
| **Security,** | ) | |
| | ) | |
|     **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Jennifer Lynn Pease (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. § 405(g). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). Docs. 10, 11.[1]

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings, arguing the Administrative Law Judge (ALJ) "failed to properly consider [her] subjective reports as required by [Social Security Ruling (SSR)] 16-3p." Doc. 12, at 7. After careful review of the

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the Administrative Record (AR) will refer to its original pagination.

record, the parties' briefs, and the relevant authority, the Court reverses and remands the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.     Administrative determination.

### A.     Disability standard.

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B.     Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff "retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984)).

**C.  Relevant findings.**

   **1.  Administrative Law Judge's findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 18-37; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found that Plaintiff:

(1)  had not engaged in substantial gainful activity since September 21, 2021, the alleged onset date;

(2)  had the following severe impairments: degenerative disc disease of the lumbar spine, with peripheral neuropathy; bilateral hip dysplasia; migraine headaches; anxiety disorder; and depression;

(3)  had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)  had the residual functional capacity[2] (RFC) to perform light work, except that she can never climb ropes, ladders, or scaffolds; she can frequently but not constantly climb ramps or stairs; she can occasionally stoop or crouch; she can less than occasionally kneel or crawl, due to her bilateral hip nerve impingement; she can frequently but not constantly perform gross handling activities with the right upper extremity; she can frequently but not constantly reach in all directions with the right upper extremity due to degenerative joint disease in the shoulder; she can perform detailed but not complex instructions and tasks; she can frequently but not constantly interact with supervisors; she can occasionally interact with coworkers; she can have less

---

[2]  Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

       than occasional contact with the general public; she can maintain adequate concentration, persistence, and pace to remain on-task for all work except assembly line and production-paced work tasks; and she can frequently but not constantly adapt to changes in workplace methods and routines.

(5)     had no past relevant work;

(6)     could perform jobs that exist in significant numbers in the national economy, such as laundry sorter, DICOT #361.687-014, office cleaner, DICOT #323.687-014, or office helper, DICOT #239.567-010; and so,

(7)     had not been under a disability from September 21, 2021, through September 19, 2023.

*See* AR 19-37.

### 2. Appeals Council's findings.

The Appeals Council denied Plaintiff's request for review, *see id.* at 1-6, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011) (internal citation omitted).

## II. Judicial review of the Commissioner's decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (internal citation omitted). "An agency decision that

4

either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Lax*, 489 F.3d at 1084 (defining substantial evidence as "more than a scintilla, but less than a preponderance"); *Wall*, 561 F.3d at 1052 (explaining that "'[e]vidence is not substantial if it is overwhelmed by other evidence in the record'") (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005)). The Court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084. Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"[T]he failure to apply proper legal standards, may under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quotations omitted). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v.*

*Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

### B. The ALJ failed to properly review Plaintiff's subjective complaints.

Plaintiff argues the ALJ erred when he assessed her consistency by considering her character rather than evaluating the consistency of her symptoms with the record. Doc. 12, at 9 (citing SSR 16-3p, 2016 WL 119029). The ALJ first observed Plaintiff had sought treatment for anxiety and depression since 2018, but only reported past trauma in 2023. *Id.* (citing AR 25). Next, the ALJ noted that Plaintiff "repeatedly also said she did not want to take medication," and she did not stay on her medications as prescribed. *Id.* at 10 (citing AR 25). He also noted that Plaintiff visited a counselor only twice, despite a recommendation of counseling. *Id.* (citing AR 25). Plaintiff maintains that in making these observations, the ALJ failed to apply "the *Frey* [*v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)] test." *Id.* at 10-11. Plaintiff also disagrees with the ALJ's determination that her treatment records "most[ly]" reflected "normal mental and behavioral functioning," because this determination does not reflect the objective evidence from her treatment visits for depression and anxiety. *Id.* at 11-12.

### 1. The evaluative process.

The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities.

SSR 16-3p, 2017 WL 5180304, at *3. Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 404.1529(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures a claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* SSR16-3p, 2017 WL 5180304, at *7-8. The Court defers to an ALJ's symptom evaluation unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias v. Sec'y of Health & Human Servs.*,

933 F.2d 799, 801 (10th Cir. 1991). An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted). The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* SSR 16-3p, 2017 WL 5180304, at *10.[3]

### a. The ALJ's analysis of Plaintiff's consistency and subjective statements.

The ALJ reached this boilerplate conclusion:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

---

[3] SSR 16-3p eliminated the use of the term "credibility" to "clarify that subjective symptom evaluation is not an examination of [a claimant's] character." 2017 WL 5180304, at *2. Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e.g.*, *Paulek v. Colvin*, 662 F. App'x 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna*); *Brownrigg v. Berryhill*, 688 F. App'x 542, 545-546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are "similar" to those set forth in *Luna*). So, Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

AR 25.

Responding to Plaintiff's complaints, the Commissioner first argues that the ALJ's consideration of Plaintiff's activities of daily living (AR 24, 25) showed he concluded that "this evidence contradicted her complaints of disabling mental limitations." Doc. 17, at 8.

The ALJ found that Plaintiff can take care of her personal needs, perform household chores, drive, shop, watch television and manage her own finances. AR 35. He acknowledged that "[s]he does have some apparent difficulty understanding and remembering adequately for more complex activities, but she remains able to make, attend and understand her diagnoses and treatment at medical appointments, including finding new providers and trying new medications." *Id.* But, Plaintiff also reported difficulty communicating with others, she experienced flashbacks of past trauma, she was a sleepwalker, she became dizzy and sick after thirty minutes outside in the heat, she needed reminders for appointments and medications, and she had to mentally prepare herself to go out in public. *Id.* at 24. She reported she avoided stores and restaurants and was anxious when shopping. *Id.* at 31. She noted that stress caused her migraines, and that changes in routine were overwhelming. *Id.* at 25.

Next, the Commissioner argues that the ALJ adequately considered the objective medical evidence about Plaintiff's mental impairments. Doc. 17, at 8-

11 (outlining ALJ's findings from his review of Plaintiff's visits from November 2021 through May 2023). But Plaintiff argues that most of the ALJ's "normal" mental status conclusions were from her visits for unrelated treatment visits. Doc. 12, at 11-12. She emphasizes the visits where she sought treatment for her mental health and anxiety show very different results. *Id.* at 12. In February 2022, she was depressed and anxious with a "reactive" affect. She was assessed with anxiety and depression as being on edge and having uncontrolled worrying in March 2022. AR 262, 381. She also showed abnormal affect in October 2022. *Id.* at 557.

Dr. Dave S. Kerby's November 2022 consultative examination report noted her anxious mood, that no anti-depression medication had worked, and that her current prescription made her throw up. *Id.* at 524. His diagnostic impression was major depressive disorder and social anxiety disorder. *Id.* at 527.

While the ALJ noted Dr. Kerby's report, he did not note that the prognosis was "poor to fair" for the next twelve months. *Id*. In November 2022, she reported her depression was 8/10, and her anxiety was 9/10. *Id.* at 766. She also reported side effects of suicidal thoughts, anger and frustration, nausea, worsening of dreams, and dizziness from various prescriptions. *Id.* She was assessed with moderate bipolar disorder and anxiety in March of 2023, *id.* at

737, and she appeared disheveled, anxious and exhibited bizarre behaviors in April 2023, *id.* at 730.

Plaintiff argues further that the ALJ did not consider the various PHQ-9 and GAD-7 scores, which consistently showed she suffered from moderate to severe depression and anxiety symptoms. Doc. 12, at 12-13.

The ALJ noted some of these scores, and that independent psychological examiner Cynthia Muhamedagic concluded Plaintiff had attention deficit disorder, generalized anxiety disorder, persistent depressive disorder, and posttraumatic stress disorder. AR 31, 780-81. But he disregarded these conclusions because they did not apply to actual functioning and were based on self-reports. *Id.* at 31.

The Commissioner points out that the ALJ noted Plaintiff only saw a counselor twice and was reluctant to take or stay on prescribed medication for very long. Doc. 17, at 11-12 (citing AR 25). And this lack of treatment added to the ALJ's discounting of her subjective complaints. *Id.*

Plaintiff argues that the ALJ failed to consider the *Frey* factors before discounting her reports based on a failure to pursue treatment. Doc. 12, at 10-11. The Commissioner argues, however, that "*Frey* is inapplicable," because

that holding only applies when an ALJ denies benefits based on a failure to pursue treatment. Doc. 17, at 12 (citing *Qualls*, 206 F.3d at 1372, for support).[4]

At first blush, the Commissioner's stance makes sense: *Qualls* held ALJs need not consider the *Frey* factors when assessing how treatment noncompliance affects subjective symptoms—unless the ALJ denies benefits due to the noncompliance. 206 F.3d at 1372. But in *Allred v. Comm'r, SSA*, 2023 WL 3035196, at *3 (10th Cir. Apr. 21, 2023), the court recognized conflicts in how it had addressed the issue. Specifically, the *Allred* court clarified that *Qualls* does not control the issue. *Id.* Rather, *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993), which predates *Qualls*, does. *Id.* And *Thompson* held that an ALJ "must consider the *Frey* factors before discounting the credibility of a claimant's symptom allegations based on a failure to pursue treatment or take medication." *Id.* (citing *Thompson*, 987 F.2d at 1490).

Similar to *Allred*, this case must be remanded. Under *Frey*, ALJs must consider four factors when "reviewing the impact of a claimant's failure to undertake treatment" on a disability determination: (1) whether the treatment would restore the claimant's ability to work, (2) whether it was prescribed, (3) whether the claimant refused the treatment, and (4) whether the refusal was

---

[4] The ALJ also noted that while Plaintiff has sought mental health care for anxiety and depression since at least 2018, "she only reported having experienced past trauma in 2023." AR 25.

justifiable. 816 F.2d at 517. The ALJ in this case did not fully consider whether the treatment would restore Plaintiff's ability to work and whether her reluctance to take prescribed medications or stay on them was justifiable.

The Commissioner points to instances where Plaintiff sought medication adjustments and changes and one report of a prescription being effective. Doc. 17, at 13 (citing AR 29-30, 727). But Plaintiff cites at least four instances where Plaintiff reported ineffective medications and/or side effects. Doc. 12, at 11 (citing AR 394, 419, 578, 766 (four different ineffective drugs and or serious side effects reported)).

In this case, it may well be that a consideration of the relevant evidence under the *Frey* factors would lead the ALJ to make precisely the same findings about Plaintiff's subjective claims and symptoms. But the ALJ must undertake this analysis, as it is the ALJ (not the court) who must weigh the evidence in the first instance. *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) (noting post hoc rationalization would require the court to "overstep [its] institutional role and usurp essential functions committed in the first instance to the administrative process").

Although the ALJ tied his consistency findings to some specific evidence in the record, neither that evidence nor Plaintiff's ability to perform some daily activities, provides substantial evidence to support the ALJ's conclusion.

## III. Conclusion.

This case is REVERSED and REMANDED so that the ALJ can properly evaluate the evidence in further administrative proceedings.

**ENTERED** this 15th day of August, 2024.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE